Jeffrey M. RHODES, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–594.

United States Court of Veterans Appeals.

Jan. 28, 1993.

Jeffrey M. Rhodes, pro se.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and R. Randall Campbell, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and STEINBERG, Associate Judges.

MANKIN, Associate Judge:

Jeffrey M. Rhodes appeals the January 28, 1991, Board of Veterans' Appeals (BVA or Board) decision which denied service connection for right thoracic outlet syndrome. The Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance on December 2, 1991. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)). The Court remands the matter to the Board for proceedings consistent with this opinion. Appellant's request for oral argument is denied.

## I. FACTUAL BACKGROUND

Veteran served on active duty in the U.S. Army from August 1983 to December 1983, and from November 1984 to May 1987. His entrance medical examination was essentially normal, but included remarks concerning depression. During service veteran was diagnosed as having mild ocular hypertension, gastroenteritis, and an ulcer. In January 1987, he complained of recurring pain in his right hand from an injury which had occurred the previous year. Veteran's medical history, recorded in · March 1987, revealed swelling of the right hand for two to three years duration, an ulcer for which veteran had received treatment, and problems with veteran's right thumb that had required it be put in a cast.

In June 1987, veteran filed a claim for service connection of a left leg injury. A Veterans' Administration (now Department of Veterans Affairs) (VA) orthopedic consultation, performed in August 1987, diagnosed veteran's condition as left compartment syndrome with fascial defect. A VA Regional Office (RO) awarded service connection for compartment syndrome with fascial defect of the left lower leg, at a noncompensable rating, effective from May 15, 1987.

Veteran filed a Substantive Appeal (Form 1-9), and in a statement in support of his claim veteran added a claim for a right shoulder disability. After complaints of swelling and paresthesia in the right hand, veteran was examined on February 1, 1989, and a manifestation of mild carpal tunnel syndrome was diagnosed. On February 13 and 27, 1989, veteran was diagnosed with right thoracic outlet syndrome. The examination report stated that veteran had complained of numbness and tingling in his right upper extremity of three years' duration, occurring occasionally. Veteran was hospitalized from March 1 to March 15, 1989, with the primary diagnosis of right thoracic outlet syndrome, and on March 8, 1989, he underwent exploration of the right brachioplexus with resection of the first rib. The doctor assessed his postoperative disability as likely to last for approximately four to six months. Veteran applied for service connection for his right shoulder condition on March 7, 1989, but his claim was denied on May 15, 1989.

Veteran filed another Substantive Appeal on September 1, 1989, and he noted that he had been treated for numbness of the right hand while serving in Germany. In January 1990, he added claims for entitlement to service connection for a hand disability, ulcer, and hypertension. On March 27, 1990, veteran was examined and diagnosed with thoracic outlet syndrome, right decreased tactile sensation, diminished grip of

right hand, and peptic ulcer. The neurological examination of April 3, 1990, revealed that veteran had severe pain due to permanent nerve damage which prevented him from performing strenuous work. The examination report stated: "This is a 26 y/o white male that had decrease[d] strength and numbness of the right arm for several years and was discovered to have thoracic outlet syndrome (compression at vessels and nerve) which due to the amount of pressure and time produce[d] permanent damage to nerves and [there] was little recovery after surgery." Veteran's medical record revealed that his prognosis for recovery was provisional muscle strength of the right arm diminished to 30–40%. The report also indicated veteran's severe pain would prevent him from work because he is right handed.

The BVA remanded appellant's claims to the VARO on February 9, 1990, for adjudication. The RO rating decision, dated April 18, 1990, denied service connection for residuals of a right hand injury involving the fourth digit, hypertension, stomach condition (claimed as an ulcer), and postoperative right thoracic outlet syndrome with right upper extremity involvement.

In further support of his claim, veteran submitted a letter he sent to his parents while in service, dated July 9, 1986, which had mentioned his arm and shoulder problems. He also submitted his mother's statement attesting to veteran's condition immediately after service, and which pointed out that veteran's disorder was not diagnosed until 1988. In addition, veteran presented a medical report from his service in Germany indicating complaints of a swollen right hand for two to three years. On January 28, 1991, the BVA denied entitlement to service connection for right thoracic outlet syndrome. *Jeffrey M. Rhodes*, BVA 91–02767 (Jan. 28, 1991).

## II. ANALYSIS

### A. Right Thoracic Outlet Syndrome

■ Right thoracic outlet syndrome is not a chronic disease subject to presumptive service connection. *See* 38 U.S.C. §§ 1101, 1112 (formerly §§ 301, 312). To establish service connection for this kind of condition, a showing of continuity of symptomatology after discharge is required to support veteran's claim. *See* 38 C.F.R. § 3.303(b) (1991); *Ivey v. Derwinski*, 2 Vet. App. 320, 323 (1992); *Sanchez v. Derwinski*, 2 Vet.App. 330, 333 (1992); *Wilson v. Derwinski*, 2 Vet.App. 16, 19 (1991). The BVA never considered whether there was continuity of symptomatology after discharge from service that eventually led to the clinical diagnosis of right thoracic outlet syndrome a year and a half later. The Court holds that a remand is necessary because veteran's current medical records fail to indicate whether there was continuity of symptomatology. The BVA shall provide veteran with a thorough and contemporaneous medical examination which takes into account the records of prior medical treatment, and results in an examination report which includes a medical opinion as to whether there is any possible relationship between veteran's past hand and shoulder problems incurred in service and veteran's current thoracic outlet syndrome. *See Green v. Derwinski*, 1 Vet.App. 121, 124 (1991); *Moore v. Derwinski*, 1 Vet.App. 401, 405 (1991). Upon completion of a new medical examination, the Board shall address veteran's claim for thoracic outlet syndrome, considering all relevant law and regulations.

■ The BVA also erred in concluding that the following situation was conclusive in defeating veteran's claim: although "postservice clinical evidence establishes that veteran has symptomatology due to right thoracic outlet syndrome, there is no *clinical* evidence substantiating such a disability until early 1989." *Rhodes*, BVA 91–02767, at 5 (emphasis added). The regulations do not require that veteran establish service connection through medical records alone, but allow for proof through lay evidence. 38 C.F.R. § 3.303 (1991); *Cartright v. Derwinski*, 2 Vet.App. 24, 25–26 (1991); *see also* 38 U.S.C. § 1154(a) (formerly § 354(a)). The record contains a letter, written by veteran's mother, which states that in May 1987 she observed veteran's right hand to be discolored and swollen.

The Court has held that a layperson's observations of symptomatology cannot be ignored, and the Board must provide an analysis of the credibility or probative value of such evidence. *See Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992); *Ohland v. Derwinski,* 1 Vet.App. 147, 149–50 (1991). The testimony, if corroborated by the medical evidence, is pertinent to developing veteran's claim of service connection.

■ The Board also failed to address veteran's July 9, 1986, letter to his parents which in the postscript indicated that veteran suffered pain and swelling in his arm and shoulder while in service. It is the duty of the BVA, as factfinder, to determine the credibility of veteran's evidence, and the Court holds that such a determination is needed here. *See Wilson,* 2 Vet. App. at 20; *Smith v. Derwinski,* 1 Vet. App. 235, 237 (1991). The Board must provide an evaluation of the credibility and probative value of veteran's letter and his mother's letter, and we remand the case to the BVA for this purpose as well.

■ Lastly, veteran directed the VA to his service medical records from Germany which he claimed would show treatment for symptoms of right thoracic outlet syndrome in 1987. The VA did not seek to obtain these relevant records; however, veteran submitted them to the Board on November 27, 1990. The Board interpreted the injuries reported in the service medical records as being resolved in service, but the BVA never discussed whether the complaints of pain and swelling were symptoms indicative of right thoracic outlet syndrome. The Board erroneously stated "in the absence of objective evidence substantiating [veteran's disability] ... service connection for right thoracic outlet syndrome is not warranted." *Rhodes,* BVA 91–02767, at 5. As stated previously, the regulations do not require that veteran establish service connection through medical records alone, but allow for proof through lay evidence. 38 C.F.R. § 3.303; *Cartright,* 2 Vet.App. at 25–26; *see also* 38 U.S.C. § 1154(a).

### B. Right Hand Injury, Hypertension, Ulcer

■ In addition to veteran's claim for thoracic outlet syndrome, he requested entitlement to service connection for an ulcer, residuals of a right hand injury, and hypertension. These claims were addressed by the VARO in its April 18, 1990, rating decision, and appealed, but the BVA failed to consider these claims in its decision. The BVA must review all issues which are reasonably raised in all documents submitted prior to the BVA decision. *See Mingo v. Derwinski,* 2 Vet.App. 51 (1992); *EF v. Derwinski,* 1 Vet.App. 324 (1991). The Court remands these issues to the Board for prompt adjudication and issuance of a new decision which will provide an adequate statement of "the reasons or bases for [its] findings and conclusions on all material issues of fact and law presented on the record." *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990); *see* 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)).

### III. CONCLUSION

Upon consideration of the record, veteran's informal brief, and the Secretary's motion for summary affirmance, the Secretary's motion is DENIED, and the case is VACATED and REMANDED for proceedings consistent with this opinion.