Citation Nr: 1722264 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 12-04 345 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to service connection for a perforated right eardrum.

2. Entitlement to service connection for a respiratory condition.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J. Abrams, Associate Counsel
INTRODUCTION

The Veteran served on active duty from February 1963 to February 1965.

These matters are before the Board of Veterans' Appeals (Board) on appeal from a June 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan.

In February 2017, the Veteran testified before the undersigned Veterans' Law Judge (VLJ) via videoconference. A copy of the hearing transcript is of record and has been reviewed.

This case was previously before the Board in June 2014 and July 2016 when it was remanded for additional development. Concerning only the claim for entitlement to service connection for a respiratory condition, for the reasons discussed below, the Board finds that there has been substantial compliance with its prior remand directives. See Stegall v. West, 11. Vet. App. 268 (1998). For the claim of entitlement to service connection for a perforated right eardrum, for the reasons discussed below, another remand is required. Id.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue of entitlement to service connection for a perforated right eardrum is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

There is no competent and credible evidence that the Veteran has a current and chronic respiratory condition.


CONCLUSION OF LAW

The criteria for entitlement to service connection for a respiratory condition have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.303 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. The Duties to Notify and Assist

As provided by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist a claimant in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2016); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In addition, the notice requirements of the VCAA apply to all five elements of a service-connection claim, including: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

In this case, a VCAA notice letter was sent to the Veteran in June 2009. This letter informed the Veteran of what evidence was required to substantiate the claim, and of his and VA's respective duties in obtaining evidence. Thereafter, the case was readjudicated by way of a statement of the case (SOC) in January 2012 and supplemental statement of the case (SSOC) in October 2013. So, he has received all required notice concerning his claim, and it has been reconsidered since providing all required notice.

VA also has a duty to assist the Veteran in the development of his claim. This duty includes assisting the Veteran in the procurement of his service treatment records (STRs) and pertinent post-service treatment records (VA and private), and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016).

The claims file contains STRs, VA medical evidence, private medical evidence, lay statements, and the Veteran's contentions and testimony. Significantly, the Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Furthermore, the Veteran was provided a VA examination to evaluate his claimed respiratory condition in February 2013. The examination report reflects that the examiner reviewed the Veteran's past medical history, recorded his current complaints, conducted an appropriate evaluation of the Veteran, and rendered an appropriate diagnosis and opinion consistent with the remainder of the evidence of record. The Board, therefore, concludes that this examination is adequate for purposes of rendering a decision in the instant appeal. See 38 C.F.R. § 4.2 (2016); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Veteran and his representative have not contended otherwise. Thus, the duties to notify and assist have been met.

II. Bryant Analysis

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) (2016) requires that the VLJ who conducts a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the videoconference hearing, the VLJ noted the elements of the claim that were lacking to substantiate the claim of service connection. 

The Veteran was assisted at the hearing by an accredited representative from the Disabled American Veterans. The representative and the VLJ asked questions to ascertain the extent of any in-service event or injury and whether the Veteran's current disability is related to his complaints during service. They also asked questions to draw out the current state of the Veteran's disability. No pertinent evidence that might have been overlooked and that might substantiate the claim was identified by the Veteran or the representative. The hearing focused on the elements necessary to substantiate the claim, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claim for service connection. Neither the representative nor the Veteran have suggested any deficiency in the conduct of the hearing. Therefore, the Board finds that, consistent with Bryant, the VLJ with the duties set forth in 38 C.F.R. § 3.103(c)(2) (2016).

III. Stegall Analysis

As previously noted, the Board remanded this case for further development in June 2014 and July 2016. The Board specifically instructed the RO to schedule a hearing for the Veteran. Subsequently, the Veteran had a videoconference hearing in February 2017. Thus, there is compliance with the Board's remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance).


IV. Legal Criteria

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active military, naval or air service. 38 U.S.C.A. 
§ 1110 (West 2014)); 38 C.F.R. § 3.303(a) (2016). Service connection may be granted for any disease diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in active service. 38 C.F.R. § 3.303(d) (2016).

Establishing service connection generally requires medical evidence or, in certain circumstances, lay evidence of the following: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009).

In its determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (noting that a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77.
The Board must assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). In Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit, citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a) (West 2014). Moreover, the United States Court of Appeals for Veterans Claims (Court) has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996).

V. Analysis

The Veteran contends that his claimed respiratory condition is etiologically related to active service. Based on the analysis below, the Board determines that the preponderance of the evidence is against the claim, and service connection is not warranted.

The Veteran does not meet the first threshold element for service connection, a current disability. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). In a February 2013 VA examination report, the examiner noted that the Veteran did not have a diagnosed respiratory condition, and had never been diagnosed with one. During the examination, the Veteran reported that his claimed respiratory condition began in 1965-1966. He stated he did not know what his respiratory condition was. He reported some shortness of breath when lying down and he had an occasional cough due to chest pressure. The Veteran noted that coughing relieved the pressure in his chest, and he coughed up phlegm that was thick and white. The examiner noted that the Veteran denied any recent respiratory infections and had not been diagnosed with a respiratory condition. 

The examiner opined that it was less likely than not that the Veteran's claimed respiratory condition was incurred in or caused by the claimed in-service injury, event, or illness. The rationale was that there was no documentation in the Veteran's claims file to substantiate a respiratory condition, or was a chronic condition during military service. The examiner noted that there was no medical evidence that the Veteran had ever been diagnosed with a respiratory condition. Additionally, the examiner reported that the respiratory examination and the pulmonary function test were normal. The examiner commented that the symptoms experienced by the Veteran could be related to the "sociodemographic variables," the Veteran's advancing age and his long standing smoking history, as well as his general physical condition. 

The most fundamental requirement for any claim for service connection is that the Veteran must first establish he or she has the condition claimed. See Degmetich v. Brown, 8 Vet. App. 208 (1995); 104 F.3d 1328 (1997) (indicating VA compensation only may be awarded to an applicant who has disability existing on the date of application, not for past disability); see also Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992) (noting that "Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. See 38 U.S.C.A. § 1110. In the absence of proof of present disability there can be no valid claim."). In other words, the evidence must show that, at some point during the appeal period, the veteran has the disability for which benefits are being claimed. Brammer, 3 Vet. App. at 225 (holding that, in the absence of proof of a present disability, there can be no valid claim)). McClain v. Nicholson, 21 Vet. App. 319 (2007) (stipulating that a service connection claim may be granted if a diagnosis of a chronic disability was made during the pendency of the appeal, even if the most recent medical evidence suggests that the disability resolved). Here, there is no competent medical evidence reflective of a diagnosis of a respiratory condition at any time during the appeal period.

The Board has not overlooked the Veteran's lay statements with regard to his claimed respiratory condition. Specifically, the Board notes that during his February 2017 hearing, the Veteran testified that he believed that his respiratory condition was a result of being assaulted during active service. The Veteran is competent to report on factual matters of which he had firsthand knowledge; and the Board finds that his reports concerning symptomatology have been credible. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). However, there is no basis for concluding that a layperson such as the Veteran is competent of determining whether he is diagnosed with a chronic respiratory condition and whether it is etiologically related to active service, in the absence of specialized medical training, which in this case he has not established. 38 U.S.C.A. § 1153(a) (West 2014); 38 C.F.R. §§ 3.303(a), 3.159(a) (2016); Jandreau v. Nicholson, supra; Buchanan v. Nicholson, supra. 

As such, the objective medical findings and negative nexus opinion provided by the February 2013 VA examination report have been accorded greater probative weight in determining that service connection is not warranted. The Board has reached this conclusion because the examiner reviewed the claims file, made repeated references to pertinent past records and statements, and provided a detailed rationale. The Board concludes that the preponderance of the evidence is against service connection for a skin condition on a direct basis. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Overall, the preponderance of the evidence is against the claim for service connection for a respiratory condition, and the claim must be denied.


ORDER

Entitlement to service connection for a respiratory condition is denied.


REMAND

Concerning the claim for entitlement to service connection for a right perforated eardrum, in a February 2013 VA examination report, the Veteran was diagnosed with a perforated right-healed eardrum. The VA examiner opined that it was less likely than not that the Veteran's perforated right eardrum was incurred in or caused by his claimed in-service injury, event, or illness. The rationale was that, according to the examiner, there was no documentation in the Veteran's claims file to substantiate that perforated right eardrum occurred, or was a chronic condition during military service. 

However, in his February 2017 videoconference hearing, the Veteran testified that while stationed in Albuquerque, New Mexico, he went out one night and a group of men attacked him. He noted that he was beaten and eventually passed out on the ground. The Veteran testified that he was hit all over his head, and ever since, he has had problems with his right ear. He reported that he never sought treatment after the initial incident because as an African-American male in the 1960s, he was worried about what might happen if he complained or sought additional treatment. The Board notes that the Veteran never told the February 2013 VA examiner about this incident, and as a result, the examiner based the medical nexus opinion on incomplete information. As a result, a new VA examination is necessary to determine if the Veteran's perforated right eardrum is etiologically related to service. 38 C.F.R. § 3.159(b)(4).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain copies of the complete updated VA clinical and private records of all evaluations and treatment the Veteran received for a perforated right eardrum. As needed, signed release forms for private records should be obtained. All requests for records and responses must be associated with the claims folder. 

If, after making reasonable efforts to obtain named records, the AOJ is unable to secure same, notify the Veteran and his representative and (a) identify the specific unavailable records; (b) briefly explain the efforts made to obtain those records; and (c) describe any further action to be taken with respect to the claims. Give the Veteran and his representative an opportunity to respond.

2. After the above has been completed, schedule the Veteran for an appropriate VA medical examination to determine the nature and etiology of his perforated right eardrum. The examiner must review the claims file and conduct all necessary testing. The requested determinations should also take into consideration the Veteran's reported medical history. All opinions must be supported by a detailed rationale.

The examiner is specifically requested to opine as to whether it is at least as likely as not (a probability of 50 percent or greater) that the Veteran's perforated right eardrum was incurred in or caused by his active military service. In forming an opinion, the examiner is asked to consider the Veteran's statements in his February 2017 hearing, detailing how he was attacked during active service, and hit repeatedly in the head.

3. After completing the above actions, and any other indicated development, the claim must be readjudicated. If any benefit remains denied, a Supplemental Statement of the Case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for further appellate review.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
A. C. MACKENZIE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs